ANOUSH HAKIMI (State Bar No. 228858)
anoush@handslawgroup.com
PETER SHAHRIARI (State Bar No. 237074)
peter@handslawgroup.com
ANI AVETISYAN (State Bar. No. 266679)
ani@handslawgroup.com
LAURA STEVEN (State Bar. No. 332168)
laura@handslawgroup.com
**THE LAW OFFICE OF HAKIMI &
SHAHRIARI**
1800 Vine Street
Los Angeles, CA 90028

Telephone: (888) 635 - 2250
Facsimile: (213) 402 - 2170

Attorneys for Plaintiff,
**JAMES SHAYLER**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| James Shayler,<br><br>        Plaintiff,<br><br>v.<br><br>Robert A. Galvan, trustee of the Robert and Judith Galvan Intervivos Trust dated September 28, 2007; Judith K. Galvan, trustee of the Robert and Judith Galvan Intervivos Trust dated September 28, 2007 and Judith K. Galvan; and Does 1-10,<br><br>        Defendants. | Case No.:<br><br>**COMPLAINT FOR VIOLATIONS OF: AMERICANS WITH DISABILITIES ACT OF 1990, 42 U.S.C. § 12181** *et seq.***; UNRUH CIVIL RIGHTS ACT, CALIFORNIA CIVIL CODE § 51** *et seq.*<br><br><br>DEMAND FOR JURY TRIAL |

**Most Americans will become disabled at some point in life.**

COMPLAINT

Plaintiff James Shayler (hereinafter referred to as "Plaintiff,") complains of Robert A. Galvan, trustee of the Robert and Judith Galvan Intervivos Trust dated September 28, 2007; Judith K. Galvan, trustee of the Robert and Judith Galvan Intervivos Trust dated September 28, 2007 and Judith K. Galvan; and Does 1-10 (each, individually a "Defendant," and collectively "Defendants"), and alleges as follows:

## I.  PARTIES

1.    James Shayler has gone through multiple knee replacement surgeries and has a pinched sciatic nerve that runs down his entire left leg which causes his leg to give out sporadically. He has spinal arthritis and experiences severe back pain on a regular basis. He has difficulty walking and standing and relies on a cane and walker for mobility. He also suffered an injury that required surgery and the resulting surgery left him with very little use of his left arm. Plaintiff is qualified as being disabled pursuant to 42 U.S.C. § 12102(2)(A), the California Unruh Civil Rights Act, §§ 51, *et seq.*, 52, *et seq.*, and other statutory laws which protect the rights of "disabled persons". Plaintiff has been issued a blue permanent disability Disabled Person Parking Placard by the State of California. Plaintiff is a California resident with physical disabilities.

2.    Defendants Robert A. Galvan, trustee of the Robert and Judith Galvan Intervivos Trust dated September 28, 2007; Judith K. Galvan, trustee of the Robert and Judith Galvan Intervivos Trust dated September 28, 2007 and Judith K.

Galvan, owned the property ("Property") located at 2920 Lincoln Blvd, Santa Monica, CA 90405, at all relevant times.

3.     There is a business establishment on the Property known as "Pancho's Tacos" (hereinafter "business").

4.     DOES 1 through 10 were at all relevant times lessors, lessees, property owners, subsidiaries, parent companies, employers, employees, agents, corporate officers, managers, principles and/or representatives of Defendants. Plaintiff is unaware of the true names and capacities of Defendants sued herein, as DOES 1 through 10, inclusive, and therefore, sues those Defendants by fictitious names. Plaintiff requests that the Court grant leave to amend this complaint to allege the true names and capacities when determined by whatever source.

5.     Plaintiff alleges that Defendants at all times have been and are relevant to this cause of action, the owners, franchisees, lessees, general partners, limited partners, agents, employees, employers, represent partners, subsidiaries, partner companies, and/or joint ventures of the remaining Defendants and were acting within the course and scope of that relationship. Plaintiff is further informed and believes and alleges that each of the Defendants gave consent to, ratified, and/or authorized the acts alleged of each of the remaining defendants.

6.     Plaintiff visited the public accommodations owned and operated by Defendants with the intent to purchase and/or use the goods, services, facilities, privileges, advantages, or accommodations operated and/or owned by Defendants.

## II.   JURISDICTION & VENUE

7.   This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1343(a)(3) & (a)(4) for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.* (the "ADA").

8.   Pursuant to supplemental jurisdiction, an attendant and related cause of action, arising from the same nucleus of operative facts and arising out of the same transactions, is also brought under California's Unruh Civil Rights Act, which act expressly incorporates the ADA.

9.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and is founded on the fact that the real property which is the subject of this action is located in this district and that Plaintiff's cause of action arose in this district.

## III.   FACTS

10.   The Property owned by Defendants is a facility which is open to the public and is a business establishment.

11.   Plaintiff alleges that the Property has been newly constructed and/or underwent remodeling, repairs, or alterations since 1992, and that Defendants have failed to comply with California access standards which applied at the time of each new construction and/or alteration or failed to maintain accessible features in operable working condition.

12.   Plaintiff visited the Property during the relevant statutory period on three separate occasions, in October 2019, October 2020 and September 2020 to

patronize the business.

13.    Defendants did not offer persons with disabilities with equivalent facilities, privileges and advantages offered by Defendants to other patrons.

14.    Plaintiff encountered barriers (both physical and intangible) that interfered with – and denied – Plaintiff the ability to use and enjoy the goods, services, privileges, and accommodations offered at the Property.

15.    Parking for patrons visiting the Property are among the facilities, privileges, and advantages offered by Defendants to patrons of the Property.

16.    However, there is no accessible parking for disabled patrons. Not one single space. The parking space designated for disabled persons does not comply with the Americans with Disabilities Act ("ADA").

17.    The parking area does not comply with the latest California Building Codes ("2010 CBC").

18.    Parking is one of the facilities, privileges, and advantages offered by Defendants to patrons of the Property.

19.    When Plaintiff visited the Property, he experienced access barriers related to parking, signage, paths of travel, and restroom.

20.    Plaintiff encountered the following barriers at Defendant's Property:

**Pancho's Tacos and the Property it sits on has no accessible designated parking space, no accessible adjacent loading/unloading access aisle, no**

**accessible restroom, and no accessible paths of travel leading into the business. There are sloping issues and faded paint in the only designated disabled parking space and access aisle. There is no way for Plaintiff to safely disembark his vehicle because the access aisle is obstructed with dining seating and other various objects.**

**VIOLATION of 2010 California Building Code (CBC) § 1114B.1.2; 1991 ADA Standards for Accessible Design (ADAS) § 4.3.2(1).** (Exterior route of travel.) An accessible route of travel is not provided to all entrances and portions of the restaurant, entrances and/or between the store and a public way.

**VIOLATION of 2010 CBC § 1127B.1.** (No accessible exterior route.) There is no accessible path of travel into the restaurant's entrances. There is no safe way for Plaintiff to travel from the parking area to the entrance of the Property.

**VIOLATION of 2010 CBC § 1127B.1; 1991 ADAS § 4.6.2(1).** (Directional signage.) There is no directional signage showing an accessible path of travel.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**VIOLATION of 2010 CBC § 1129B.4.**  (Off-street unauthorized parking sign.)  The tow away sign(s) (white sign stating that "UNAUTHORIZED VEHICLES PARKED IN DESIGNATED ACCESSIBLE SPACES … WILL BE TOWED AWAY") must be posted in a conspicuous place at each entrance to an off-street parking lot (facility), or immediately adjacent to and visible from each designated parking stall (space). The requisite sign(s) are not posted.

**VIOLATION of 2010 CBC § 1129B.4.**  (Off-street unauthorized parking sign – towed vehicle information.)  The tow away sign (white sign stating that "UNAUTHORIZED VEHICLES PARKED IN DESIGNATED ACCESSIBLE SPACES … WILL BE TOWED AWAY") does not state the required information regarding the tow company and telephone number.

**VIOLATION of 2010 ADAS 403.3.** (Path of travel- cross slope.) The cross slope of the accessible path of travel is greater than two (2) percent.

**VIOLATION of 2010 CBC § 1129B.3; 1991 ADAS § 4.6.3; 2010 ADAS § 502.2.** (Faded paint – accessible space lines.) The paint used for the designated accessible parking space is so worn and aged that it cannot be seen. This makes it unclear where the actual parking space is. The required

width dimensions are not painted as required. This makes it difficult for Plaintiff to park in the designated space.

**VIOLATION of 2010 CBC § 1129B.3; 2010 ADAS § 502.2.** (Width of space). The parking space designated for disabled persons measures less than nine (9) feet wide. This makes it difficult for Plaintiff to park in the designated space.

**VIOLATION of 2010 CBC § 1129B.3; 2010 ADAS § 502.2.** (Length of space.) The designated disabled parking space measures less than eighteen (18) feet long, which makes it difficult for Plaintiff to park in the designated space.

**VIOLATION of 2010 CBC § 1133B.7.1; 1991 ADAS § 4.6.8.** (Abrupt changes in level.) The path of travel from the space reserved for disabled patrons has an uneven ground surface with changes in level exceeding one-half inch.

**VIOLATION of 2010 CBC § 1129B.3.4; 1991 ADAS § 4.6.3; 2010 ADAS § 502.4.** (Slope of parking space.) The parking space reserved for disabled patrons has surface slopes in it that are greater than two (2) percent.

**VIOLATION of 2010 CBC § 1129B.3.4; 1991 ADAS § 4.6.3; 2010 ADAS § 502.4.** (<u>Slope of adjacent access aisle.</u>) The adjacent loading/unloading access aisle for the space reserved for disabled persons has surface slopes in it that are greater than two (2) percent.

**VIOLATION of 1991 CA Title 24 § 1129B.4.2; 2010 CBC § 1129B.3; 2010 ADAS § 4.6.3.** (<u>Length of adjacent access aisle.</u>) The adjacent access aisle to the designated disabled parking space is less than eighteen (18) feet long. This makes it difficult for Plaintiff to use the adjacent space to safely disembark from the car.

**VIOLATION of 1991 CA Title 24 § 1129B.4.2; 2010 CBC § 1129B.3; 2010 ADAS § 4.6.3.** (<u>Width of adjacent access aisle.</u>) The adjacent loading/unloading access aisle to the designated disabled parking space is less than five (5) feet wide.  This makes it difficult for Plaintiff to use the adjacent space to safely disembark from the car.

**VIOLATION of 2010 CBC § 1129B.3.1; 1991 ADAS § 4.6.3; 2010 ADAS § 502.3.** (<u>No loading/unloading access aisle.</u>) The adjacent loading/unloading access aisle for the accessible parking space is missing entirely. The adjacent

loading/unloading access aisle is inaccessible because it is obstructed by dining table seating, a trash can, and other objects. This makes it difficult for Plaintiff to use the adjacent space to safely disembark from the car.

**VIOLATION of 2010 CBC § 1129B.4.** (Surface signage.) The paint used for the designated accessible parking spaces is faded and cannot be seen. There is no compliant surface signage at the designated disabled parking space. The International Access Symbol is so faded and worn that it cannot be read. The street surface (pavement) signage is unreadable because the paint has faded.

**VIOLATION of 2010 CBC § 1129B.3.1.** ("NO PARKING" – ground surface sign.) The words "NO PARKING" is fading from the adjacent loading/unloading access aisles.  As a result, non-disabled patrons park in the loading/unloading access aisles, blocking Plaintiff from being able to use the access aisles.  Cars and trucks park or block the access aisles because the paint is faded and difficult to read.

**VIOLATION of 2010 ADAS § 502.3.** (Access aisles.) The adjacent loading/unloading access aisle must adjoin an accessible route to an accessible entrance. It does not.

**VIOLATION of 2010 CBC §§ 1120B.2, 1133B.7.4; 2010 ADAS §§ 302.1,**

**303.3.**  <u>(Path from parking – uneven surface.)</u>  The path of travel from the designated disabled parking space to the entrance has damaged ground that is uneven.  The damaged ground is uneven with loose material.  There are cracks and uneven surfaces on the surface of the ground within the designated path of travel leading into the entrance.  This makes traveling in this area difficult.  The path of travel from the designated disabled parking space to the entrance runs into cracks and changes in level greater than one-half inch, but no ramps are provided.  These steep changes in level create uneven surfaces.

**VIOLATION of 2010 CBC § 1129B.3.1; 2010 ADAS § 502.6; ADAS § 4.6.3.** <u>(Marked path of travel.)</u>  There is no marked path of travel from the disabled parking space to the entrance. There is no safe way for Plaintiff to park there and then travel to the entrance of the Property. Plaintiff is forced to travel a dangerous route, in the vehicle drive path to move from the space to the entrance.

**VIOLATION of 2010 CBC § 1133B.7.1.** <u>(Walks/sidewalks minimum width.)</u>  The walk leading into the business does not have a minimum width of forty-eight (48) inches.

**VIOLATION of 2010 CBC § 1133B.5.1; 1991 ADAS § 4.8.1.** (<u>Ramps</u>.) The accessible route of travel has a slope greater than 1:20 (5%) but is not a compliant ramp.

**VIOLATION of 2010 CBC § 1133B.5.2.** (<u>Minimum width of ramps.</u>)  The ramps do not have a minimum clear width of forty-eight (48) inches.

**VIOLATION of 2010 CBC § 1133B.5.3; 1991 ADAS § 4.8.2.** (<u>Least possible slope of ramp</u>.) The least possible slope is not used for the ramp leading into the business.

**VIOLATION of 2010 CBC § 1133B.5.3.1; 1991 ADAS § 4.8.6.** (<u>Maximum cross slope of ramp.</u>) The cross slope of the ramp was greater than 2%.

**VIOLATION of 2010 CBC § 1133B.5.4; 1991 ADAS § 4.8.4.** (<u>Level ramp landings.</u>) Level ramp landings must be provided at the top and bottom of each ramp. They are not provided.

**VIOLATION of 2010 CBC § 1133B.5.4; 1991 ADAS § 4.8.4(1).** (<u>Width of ramp landings</u>.) The landing of ramps must be at least as wide as the ramp run leading to it, but they are not.

**VIOLATION of 2010 CBC § 1133B.5.4.2; 1991 ADAS §§ 4.8.4(2), 4.8.4(3).** (Minimum landing width and length for top ramp landings.) The ramp's top landing is not sixty inches (60") wide and long as required.

**VIOLATION of 2010 CBC § 1133B.5.4.2.** (Minimum landing length for bottom ramp landings.)  The ramp's bottom landing is not seventy-two inches (72") in length as required.

**VIOLATION of 2010 CBC § 1133B.5.4.6; 1991 ADAS § 4.8.4(3).** (Minimum landing size for change of direction in ramp.)  The change of direction in the ramp does not have a minimum landing size of 60" x 60".

**VIOLATION of 2010 CBC § 1127B.5.7; 1991 ADAS § 4.7.7.** (Detectable warnings - curb ramp.) Detectable warnings extending the full width and depth of the ramp are not installed where curb ramps lead to an accessible route.

**VIOLATION of 2010 ADAS § 404.2.4.4.** (Slope of ground surface within clearances.) Floor or ground surface within required maneuvering clearances shall not have a slope exceeding two (2) percent. The entryway into the business has a slope of more than two (2) percent.

**VIOLATION of 2010 CBC § 1133B.7.4; 2010 ADAS § 303.3.** (<u>Front door entrance threshold and weather strip changes in level.</u>)  Inside the building, the front door entrance threshold and weather strip has changes in level greater than one-half inch but provides no ramps.  This makes traversing this area difficult.

**VIOLATION of 2010 ADAS § 404.2.8.1.** (<u>Closing speed of door.</u>) The door closer is not adjusted so that from an open position of ninety (90) degrees, the time required to move the door to a position of twelve (12) degrees from the latch is five (5) seconds minimum. The restroom door takes less than five (5) seconds to move from a position of ninety (90) degrees to a position of twelve (12) degrees from the latch.

**VIOLATION of 2010 CBC § 1133B.2.5; 1991 ADAS § 4.13.11; 2010 ADAS § 404.2.9.** (<u>Effort to operate restroom door.</u>) The door opening force is greater than five (5) pounds, making it hard for Plaintiff to get inside the restroom.

**VIOLATION of 2010 CBC § 1115B.6.** (<u>Sanitary facilities – door signage.</u>) The sanitary facilities are missing door signage indicating an accessible facility.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**VIOLATION of 2010 CBC § 1117B.5.7; 1991 ADAS § 4.30.6; 2010 ADAS § 703.4.** (Sanitary facilities – wall signage.) There is no signage on the wall approaching the restrooms.

21.     These inaccessible conditions denied Plaintiff full and equal access and caused difficulty, humiliation, and/or frustration.

22.     The barriers existed during each of Plaintiff's visits in 2019 and 2020.

23.     Plaintiff alleges that Defendants knew that the foregoing architectural barriers prevented access. Plaintiff will prove that Defendants had actual knowledge that the architectural barriers prevented access, and that the noncompliance with the ADA Accessibility Guidelines and Title 24 of the California Building Code was intentional.

24.     Plaintiff intends visit the Property again soon. Currently, Plaintiff is reasonably deterred from returning to Defendants' public accommodation facilities because of the knowledge of barriers to equal access, relating to Plaintiff's disabilities, that continue to exist at the Property.

25.     Defendants have failed to maintain in working and useable conditions those features necessary to provide ready access to persons with disabilities.

26.     Defendants have the financial resources to remove these barriers without much expense or difficulty in order to make their Property more accessible

to their mobility impaired customers. The removal of these barriers is readily achievable. The United States Department of Justice has determined that removal of these types of barriers is readily achievable to remove.

27.    Defendants refuse to remove these barriers.

28.    On information and belief, Plaintiff alleges that Defendants' failure to remove these barriers was intentional, because the barriers are logical and obvious. During all relevant times, Defendants had authority, control, and dominion over these conditions; thus, the absence of accessible facilities was not a mishap, but rather an intentional act.

29.    These barriers to access are described herein without prejudice to Plaintiff citing additional barriers to access after further inspection by Plaintiff's access agents, pursuant to *Doran v 7-ELEVEN, Inc.,* 524 F3d 1034 (9th Cir. 2008) (holding that once a plaintiff encounters one barrier at a site, a plaintiff can sue to have all barriers that relate to his or her disability removed, regardless of whether he or she personally encountered them).

**IV. FIRST CAUSE OF ACTION: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990 (42 U.S.C. section 12101, *et seq*.)**

(Against All Defendants)

30.    Plaintiff alleges and incorporates by reference each and every allegation contained in all prior paragraphs of this complaint.

31.    Title III of the ADA prohibits discrimination against any person on the

16

COMPLAINT

basis of disability in the full and equal enjoyment of the goods, services, facilities,

privileges, advantages, or accommodations of any place of public accommodation

by any person who owns, leases, or operates a place of public accommodation.

U.S.C. § 12182(a).

32.     Defendants discriminated against Plaintiff by denying "full and equal

enjoyment" and use of the goods, services, facilities, privileges, or accommodations

of Defendant's facility during each visit and each incident of deterred visit.

33.     The acts and omissions of Defendants herein were/are in violation of

Plaintiff's rights under the ADA and the regulations under 28 C.F.R. Part 36, *et seq.*

34.     Pursuant to the ADA, discrimination is a "failure to make reasonable

modifications in policies, practices or procedures, when such modifications are

necessary to afford goods, services, facilities, privileges, advantages or

accommodations to individuals with disabilities, unless the entity can demonstrate

that making such modifications would fundamentally alter the nature of such goods,

services, facilities, privileges, advantages or accommodations." 42 U.S.C. §

12182(b)(2)(A)(ii).

35.     The ADA requires removal of architectural barriers in existing

facilities where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv.)

("discrimination includes … a failure to remove architectural barriers, and

communication barriers that are structural in nature, in existing facilities, … where

such removal is readily achievable"). The term "readily achievable" is defined as

"easily accomplishable and able to be carried out without much difficulty or expense." 42 U.S.C. § 12181(9). Barriers are defined by reference to the ADA Standards of Accessible Design ("ADAS"), found at 28 C.F.R., Part 36, including the ADA Accessibility Guidelines for Buildings and Facilities ("ADAAG") at Part 36, Appendix A.

36.   If removal of any barrier is not readily achievable, a failure to make goods, services, facilities, or accommodations available through alternative methods is also prohibited if these methods are readily achievable. 42 U.S.C. § 12182(b)(2)(A)(v).

37.   Plaintiff alleges that Defendants can easily remove the architectural barriers at their facility without much difficulty or expense, and that Defendants violated the ADA by failing to remove those barriers because removal was readily achievable. There are companies in the area which can repaint parking areas for as little as $350. Defendants can afford such costs, which are a fraction of what Defendants receive in rental profits for such a large and expensive property.

38.   Alternatively, if it was not "readily achievable" for Defendants to remove barriers at their facilities, Defendants violated the ADA by failing to make the required services available through alternative methods, which are readily achievable.

39.   On information and belief, the facility was modified after January 26, 1992, mandating compliance access requirements under the ADA.

40.     The ADA requires that facilities altered in a manner that affects or could affect their usability must be made readily accessible to individuals with disabilities to the maximum extent feasible. 42 U.S.C. §12183(a)(2).

41.     Plaintiff alleges that Defendants altered the facilities at the Property in a manner that violated the ADA, and/or failed to make the Property readily accessible to physically disabled persons, including Plaintiff, to the maximum extent feasible.

42.     The ADA also requires reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations. 42 U.S.C. § 12182(b)(2)(A)(ii).

43.     Plaintiff alleges that Defendants violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Property when these modifications were necessary to afford (and would not fundamentally alter the nature of) the goods, services, facilities, privileges, advantages, or accommodations.

44.     Plaintiff seeks a finding from this Court that Defendants violated the ADA, so that he may pursue damages under California's Unruh Civil Rights Act for Disable Persons Act.

45.     Here Defendants' failure to make sure that accessible facilities were

available and ready to be used by the Plaintiff was/is a violation of law.

46.     Plaintiff would like to continue to frequent Defendants' property because it is close to his home. However, he is deterred from doing so because he has been discriminated against and is aware of accessibility barriers at the Property.

47.     Among the remedies sought, Plaintiff seeks an injunction order requiring compliance with state and federal access laws, and remediation of all the existing access violations at the Property.

## V. SECOND CAUSE OF ACTION: VIOLATION OF THE UNRUH ACT

### (Cal. Civ. Code § 51-53.)

(Against All Defendants)

48.     Plaintiff repleads and incorporates by reference, as though fully set forth herein, the allegations contained in all prior paragraphs of this complaint.

49.     California Civil Code § 51 states, in part: "All persons within the jurisdictions of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."

50.     California Civil Code § 51 also states, in part: "No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person."

51.     California Civil Code § 51(f) specifically incorporates, by reference, an individual's rights under the ADA, into the Unruh Civil Rights Act. ("Unruh

Act").

52.     The Unruh Act also provides that a violation of the ADA, or California state accessibility regulations, is a violation of the Unruh Act Cal. Civ. Code § 51(f); *Arnold v. United Artists Theatre Circuit, Inc.*, 866 F. Supp. 433, 439 (N.D. Cal. 1994).

53.     Defendants' above-mentioned acts and omissions have violated the Unruh Act by denying Plaintiff his rights to full and equal use of the accommodations, advantages, facilities, privileges, and services they offer, on the basis of Plaintiff's disability.

54.     Defendants' above-mentioned acts and omissions have also violated the Unruh Act by denying Plaintiff his rights to equal access pursuant to the ADA; and, thus, Defendants are liable for damages. Cal. Civ. Code § 51(f), 52(a).

55.     Because violation of the Unruh Act resulted in difficulty, discomfort, and/or embarrassment for Plaintiff, the Defendants are each also responsible for statutory damages, such as a civil penalty. Cal. Civ. Code § 55.56(a)(c).

56.     Plaintiff was actually damaged.

//

//

//

//

//

57.     Plaintiff was damaged by Defendants' wrongful conduct and seeks statutory minimum damages of four thousand dollars ($4,000) for each offense.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants, as follows:

1. For injunctive relief, compelling Defendants to comply with the Americans with Disabilities Act and the Unruh Civil Rights Act. Note: Plaintiff is not invoking section 55 of the California Civil Code and is not seeking injunctive relief under the Disabled Person Acts.

2. Damages under the Unruh Civil Rights Act, which provides for actual damages and a statutory minimum of $4,000 per each offense.

3. Reasonable attorney fees, litigation expenses and costs of suit, pursuant to 42 U.S.C. § 12205, and Cal. Civ. Code § 52.

## **JURY DEMAND**

Plaintiffs demand a trial by jury on all issues so triable.

DATED: December 10, 2020              THE LAW OFFICE OF HAKIMI & SHAHRIARI

By:   /s/ Peter Shahriari, Esq.
PETER SHAHRIARI, ESQ.
Attorney for Plaintiff, James Shayler